UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **18-22415**

CIV-WILLIAMS/TORRES

Sealed

FILED by _____ D.C.
JUN 14 2018
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA – MIAMI

UNITED STATES OF AMERICA,

Plaintiff,

-against-

ANY AND ALL RADIO STATION
TRANSMISSION EQUIPMENT, RADIO
FREQUENCY POWER AMPLIFIERS,
RADIO FREQUENCY TEST EQUIPMENT
AND ANY OTHER EQUIPMENT
ASSOCIATED WITH OR USED IN
CONNECTION WITH THE
TRANSMISSIONS ON FREQUENCY
98.7 MEGAHERTZ LOCATED IN A
SINGLE-FAMILY RESIDENCE AT 1341
NORTHEAST 148th STREET, MIAMI,
FLORIDA

FILED IN CAMERA
AND UNDER SEAL

Defendants-In-Rem

_____/

## VERIFIED COMPLAINT *IN REM*

The United States of America, through the United States Attorney for the Southern District of Florida, files this complaint *in rem* against the defendant Any and All Radio Station Equipment, Radio Frequency Power Amplifiers, Radio Frequency Test Equipment and Any Other Equipment Associated with or used In Connection with the Frequency 98.7 MHz Located in a Single-Family Dwelling located at 1341 Northeast 148th Street, Miami, Florida, and alleges upon information and belief as follows:

1

## PRELIMINARY STATEMENT

1. Plaintiff, the United States of America, brings this action *in rem*, under 47 U.S.C. § 510, to forfeit and condemn to the use of the United States any and all radio station transmission equipment, radio frequency power amplifiers, radio frequency test equipment, and any other equipment (the "Defendant Radio Station Equipment") associated with, or used in connection with, any radio transmission on the frequency 98.7 Megahertz ("MHz") located in a single-family residence located at 1341 Northeast 148th Street, Miami, Florida 33161 and in the backyard of that residence.

2. Based upon the training, expertise, and experience of Federal Communications Commission ("FCC") agents, as well as specific observations of such equipment used in association with transmissions on the frequency 98.7 MHz, the Defendant Radio Equipment includes, without limitation, FM antenna(ae); coaxial cable(s); transmitter(s); FM exciter(s); equalizer(s); amplifier(s); mixer(s); radio console(s); FM tuner(s); audio cable(s) and connector(s); microphone(s); audio monitor(s); video monitor(s); desktop and/or laptop computer(s); audio playback components, such as equipment to play digital media, audio tapes, compact disks, and long playing ("LP") records; headphone(s); telephone system(s); network router(s); and uninterruptable power supply(ies).

3. The Defendant Radio Station Equipment is being, or was, used in violation of 47 U.S.C. § 301.

## JURISDICTION

4. This Court has subject matter and *in rem* jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 (action commenced by the United States), 1355(a) and (b) (actions which

may be brought in the district where any of the acts giving rise to the forfeiture occurred), and 47 U.S.C. § 510 (actions for seizure of communications devices), respectively.

5. Venue lies in the Southern District of Florida pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1395(b), as the Defendant Radio Station Equipment is located within the Southern District of Florida and the acts and omissions giving rise to the forfeiture occurred in the Southern District of Florida.

## STATUTORY BACKGROUND

6. The FCC is an independent federal agency created by Congress to regulate interstate, intrastate, and foreign radio communications pursuant to the Communications Act of 1934, as amended (the "Act"), 47 U.S.C. §§ 151, *et seq*. Among other things, the FCC is responsible for ensuring that no person transmits radio signals within the territorial boundaries of the United States without an FCC license or other prior FCC authorization.

7. Section 301 of the Act prohibits the operation of "any apparatus for the transmission of energy or communications or signals by radio (a) from one place in [the United States] to another place in the [United States]," except under, and in accordance with, the Act and with a license for that purpose granted under the provisions of the Act. 47 U.S.C. § 301.

8. The only exceptions to this licensing requirement are for Federal government operators, certain services that are "licensed by rule" pursuant to Section 307(e) of the Act, and certain non-licensed low-power radio transmitters operating at a power level that complies with Section 15.239(b) of Title 47 of the Code of Federal Regulations (the "FCC Rules"). Section 15.239(b) of the FCC Rules limits such non-licensed, low power radio transmitters to a field strength of 250 microvolts per meter ("$\mu V/m$") at three meters from the transmitting antenna. 47 C.F.R. § 15.239(b).

9. Under Section 510 of the Act, "[a]ny electronic, electromagnetic, radio frequency, or similar device, or component thereof, used... with willful and knowing intent to violate [S]ection 301 ... may be seized and forfeited to the United States." 47 U.S.C. § 510.

10. Section 312(f)(1) of the Act, which applies to violations for which forfeitures are assessed under Section 510, provides that "[t]he term 'willful,' when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this Act or any rule or regulation of the Commission authorized by this Act." 47 U.S.C. § 312(f)(1).

11. Section 312(f)(2) of the Act, which also applies to violations for which forfeitures are assessed under Section 510, provides that "[t]he term 'repeated,' when used with reference to the commission or omission of any act, means the commission or omission of such act more than once, or, if such commission or omission is continuous, for more than one day." 47 U.S.C. § 312(f)(2).

## STATEMENT OF FACTS

12. On July 11, 2011, the FCC Enforcement Bureau received a complaint from the licensee of a radio station that an unauthorized FM broadcast station was operating on 98.7 MHz in Miami, Florida.

13. On July 11, 2011, two FCC agents from the FCC Enforcement Bureau's Miami Field Office (the "Miami Office") began to investigate the alleged unauthorized broadcast station referenced in the July 11, 2011 complaint. The agents used an FCC mobile direction-finding vehicle ("MDFX"), which measures the direction from which a received radio signal was transmitted. By combining the direction information from multiple measurements, the MDFX locates the source of a transmission via triangulation. Using the MDFX, the FCC agents

detected a station operating on 98.7 MHz and determined that the source of the signal was likely located in a single-family residence located at 40 Northeast 152nd Street, Miami, Florida (the "152nd Street Location").

14. In an attempt to visually locate the station's FM broadcast antenna, FCC agents walked around the rear of the 152nd Street Location. They observed an antenna mounted on a tall pole supported by a tree on the property, with a coaxial cable running from the antenna into the back of the 152nd Street Location.

15. FCC agents observed that, while listening to the station in the MDFX, the Radio Data System ("RDS") displayed "98.7 FM Energy."

16. An FCC agent measured the strength of the station's signal at 466 meters from the source of the transmission and determined that the field strength, when extrapolated to three meters, was 1,353,258 $\mu V/m$, or 5,413 times the permissible level for a non-licensed, low power radio transmitter under Section 15.239(b) of the FCC Rules.

17. On July 18 and 19, 2011, an FCC agent searched public social media websites to determine the identity of the station operating on frequency 98.7 MHz. The agent located the website "www.energy.com." The website homepage identified "DJ Oneway, Host of Energy FM," with the telephone number "786-357-5347" and email address "DJOnewayonthemix@gmail.com." The agent also conducted a domain name search on the website, www.godaddy.com to determine the registrant of www.energyfm.com. Through this search, he determined the registrant of the website is Robenson Thermitus, who resided at 1070 Northeast 151st Terrace, North Miami Beach, Florida 33162 (the "151st Terrace Residence"), with the same telephone number that appeared on the website homepage (786-357-5347).

18. On August 16, 2011, FCC agents returned to the 152nd Street Location and made an audio recording of the station's broadcasts on 98.7 MHz, during which the announcer identified the station as "RadioEnergy FM."

19. On the same date, FCC agents encountered two women at the 152nd Street Residence. One woman identified herself to the agents as Marie Fond-Rose and as the owner of the 152nd Street Location, and introduced the other woman to the agents as her daughter-in-law, Daphne Fond-Rose. The agents questioned Marie Fond-Rose about the ownership of the station, and she responded that a man known as "Oneway" installed radio equipment in her house and paid her rent for a room in her home. Marie Fond-Rose then called Oneway on her cell phone and handed the cell phone to one of the agents. The agent talked to Oneway and informed him that operating a radio station without an FCC license violates the FCC Rules. Oneway told the agent that he would remove the equipment from the 152nd Street Location.

20. In addition, the agents hand-delivered a Notice of Unlicensed Operation ("NOUO") to Marie and Jean Fond-Rose at the 152nd Street Location. The NOUO advised, among other things, that an unauthorized radio station was operating on frequency 98.7 MHz in violation of Section 301 of the Act. The NOUO instructed Marie and Jean Fond-Rose to immediately cease unlicensed operation of the station, and outlined the potential penalties for such violation, including the seizure of equipment, fines, and imprisonment. The NOUO indicated that Marie and Jean Fond-Rose had ten days to respond. The Miami Office did not receive a response to the NOUO.

21. On August 17, 2011, an FCC agent researched the Florida Department of State Corporation database and confirmed that "DJ Oneway, Inc." was registered as an inactive corporation, and Robenson Thermitus was identified as the registered agent, with a mailing

6

address of the 151st Terrace Residence. The agent also researched public records and determined that Robenson Thermitus had the personalized Florida license plate, "DJ1 Way."

22. On September 23, 2011, the FCC agent conducted another Internet search to try to obtain more information about Robensen Thermitus and discovered Facebook and MySpace webpages for "Dj Oneway-on the mix" and "Energy FM 98.7" which is the same identifying information that appears on Robenson Thermitus' website "www.energyfm98.7.com." *See supra* paragraph 17.

23. On October 7, 2011, the FCC agent conducted another Internet research on Robenson Thermitus and confirmed that his cell phone number was the same one listed on the website "www.energyfm98.7.com" and for the entity "DJ Oneway, Inc." (786-357-5347).

24. On October 13, 2011, the FCC agent researched the Florida Department of Highway Safety and Motor Vehicles database and obtained a copy of Robenson Thermitus' driver's license photograph. The FCC agent confirmed that the driver's license photograph matches the photographs of Robenson Thermitus on DJ Oneway's MySpace webpage.

25. On January 20, 2012, the FCC's Enforcement Bureau issued a Notice of Apparent Liability ("NAL") proposing a penalty of $10,000 against Robenson Thermitus for operating an unlicensed radio transmitter on frequency 98.7 MHz in Miami, Florida. The NAL was sent by first class and certified mail with a return receipt to the 151st Terrace Residence. A "Karen Slaughter" signed for the certified mail copy of the NAL on January 21, 2012. The Enforcement Bureau did not receive a response to the NAL.

26. On April 3, 2012, the Enforcement Bureau issued a Forfeiture Order affirming the $10,000 penalty against Robenson Thermitus. The Enforcement Bureau did not receive a

response to the Forfeiture Order and the monetary penalty imposed in the Forfeiture Order has not been paid.

27. On June 25, 2013, the United States Attorney's Office informed the FCC that the United States Attorney's Office had obtained a default judgement against Thermitus, entered on June 17, 2013. Subsequently, the United States Attorney's Office concluded the $10,000 penalty assessed against Thermitus was uncollectible, and closed the case.

28. Due to limited resources and competing enforcement matters, the FCC agents did not investigate Robenson Thermitus again until 2017.

29. On July 19, 2017, while monitoring frequencies for unauthorized broadcasts, FCC agents, using the MDFX, located a station on frequency 98.7 MHz and traced the source of the signal to a single-family residence located at 1341 Northeast 148th Street, Miami, Florida 33161 (the "148th Street Location"). The agents observed an antenna mounted on a tall pole in the backyard of the house at the 148th Street Location with a coaxial cable running from the antenna into the back of the house.

30. On July 19, 2017, upon locating the source of the transmissions, an FCC agent measured the strength of the station's signal at a distance of approximately 606 meters from the source of the transmission and determined that the field strength, when extrapolated to three meters, was 3,196,974 µV/m or 12,788 times the permissible level for a non-licensed low power radio transmitter under Section 15.239(b) of the FCC Rules.

31. On July 20, 2017, the FCC agent searched the Miami-Dade Office of the Property Appraiser property records and determined that Robenson Thermitus, Sr. (also known as Robenson Thermitus) and Darlie Thermitus were the owners of the house located at the 148th

Street Location. The agent also conducted a public records search and confirmed that Robenson Thermitus resides at the 148th Street Location.

32. On July 20, 2017, the FCC agent searched the FCC FM Query database and confirmed that FCC records show the Commission has not ever issued a license to operate an FM broadcast station on frequency 98.7 MHz at the 148th Street Location.

33. On August 26, 2017, FCC agents returned to the 148th Street Location and, again, used an MDFX to trace the signal of the unlicensed station operating on 98.7 MHz to a single-family residence located at the 148th Street Location. The agents again observed an antenna mounted on a tall pole in the backyard of the 148th Street Location with a coaxial cable running from the antenna into the back of the house.

34. On September 6, 2017, the FCC's Atlanta Regional Office ("Atlanta Office") issued, by U.S. first class mail ("USPS") and UPS with signature confirmation, a NOUO to Robenson Thermitus, at the 148th Street Location in Miami, Florida, for operating an unlicensed radio station on frequency 98.7 MHz. The NOUO advised, among other things, that an unlicensed radio station was operating on 98.7 MHz from the 148th Street Location, in violation of Section 301 of the Act. The NOUO also outlined the potential penalties for such violation, including the seizure of equipment, fines, and imprisonment. The UPS delivery confirmation notice confirmed the NOUO was delivered to Mr. Thermitus at his residence, the 148th Street Location, on September 12, 2017. The NOUO sent via USPS was not returned to the Atlanta Office. The FCC did not receive a response to the NOUO.

35. On October 28, 2017, FCC agents returned to the 148th Street Location and, using the MDFX, confirmed that transmissions on 98.7 MHz continued to emanate from the residence at that location. The agents again observed an antenna mounted on a pole in the backyard with a

coaxial cable running from the antenna into the back of the house — the same set-up as the agents viewed during prior observations.

36. On the same day, upon locating the source of the signal, an agent measured the strength of the station's signal at a distance of approximately 606 meters from the source of the transmission and determined that the field strength, when extrapolated to three meters, was 418,207 µV/m or 1,673 times the permissible level for a non-licensed low power radio transmitter under Section 15.239(b) of the FCC Rules.

37. On November 27, 2017, the agent searched the FCC FM Query database and confirmed the FCC had not authorized a broadcast station to operate on frequency 98.7 MHz at 1341 Northeast 148th Street in Miami, Florida.

38. On December 5, 2017, the Atlanta Office issued, by USPS and UPS with signature required, a NOUO to Robenson Thermitus at the 148th Street Location in Miami, Florida, for operating an unlicensed radio station on 98.7 MHz. The NOUO advised, among other things, that an unlicensed radio station was operating on 98.7 MHz from the 148th Street Location, in violation of Section 301 of the Act. The NOUO also outlined the potential penalties for such violation, including the seizure of equipment, fines, and imprisonment. The NOUO indicated Mr. Thermitus has ten days to respond. The UPS delivery notice confirmed the NOUO was delivered to Mr. Thermitus at his residence, the 148th Street Location, on December 7, 2017. The NOUO sent via USPS was not returned to the Atlanta Office. The Enforcement Bureau did not receive a response to the NOUO.

39. On May 3, 2018, FCC agents returned to the 148th Street Location and, using mobile direction-finding techniques, confirmed that transmissions on 98.7 MHz continued to

emanate from the residence at that location — the same location the agents identified during prior observations (see paragraphs 33, 35).

40. On the same day, upon locating the source of the signal, one of the agents measured the strength of the station's signal at a distance of approximately 335 meters from the source of the transmission and determined that the field strength, when extrapolated to three meters, was 1,851,149 µV/m or 7,405 times the permissible level for a non-licensed low power radio transmitter under Section 15.239(b) of the FCC Rules.

41. As described above, unlicensed broadcasting is permitted only if the field strength of the transmissions does not exceed 250 µV/m at three meters from the transmitting antenna.

42. On each of the dates FCC agents investigated the source of the transmissions on 98.7 MHz and took field strength measurements, they determined that the field strength measurements for the unlicensed station on 98.7 MHZ, when extrapolated to three meters, far exceeded the level authorized for a non-licensed low-power radio transmitter under Section 15.239(b) of the FCC Rules.

43. Accordingly, an FCC license is required for the operation of this station on frequency 98.7 MHz.

44. The FCC's records show, however, that no license has ever been issued for the operation of an FM broadcast station at the 148th Street Location.

45. To date, Robenson Thermitus, or anyone on his behalf, has not filed an application with the FCC to operate a licensed radio station.

46. Thus, Robenson Thermitus, the owner of the 148th Street Location, is operating an unlicensed station in violation of 47 U.S.C. § 301.

11

47. Because the Defendant Radio Station Equipment has been or is currently being used to operate an unlicensed broadcast radio station, seizure and forfeiture of the Defendant Radio Station Equipment is necessary to prevent continuing violations of the Act.

48. By this action, Plaintiff seeks to seize and forfeit the Defendant Radio Station Equipment, identified more specifically above in paragraphs 1 and 2, located at the 148th Street Location. Plaintiff submits there is probable cause to believe that the devices comprising the Defendant Radio Station Equipment may be found at the 148th Street Location, because such equipment has been observed mounted to a tall pole in the backyard of that property with a coaxial cable running from the antenna into the back of the house, and because measurements taken from or near the 148th Street Location confirm that the station is located on the property of the 148th Street Location.

## **CLAIM FOR RELIEF**

49. Plaintiff repeats and alleges each and every allegation set forth in paragraphs 1 through 48.

50. The Defendant Radio Station Equipment was used, and continues to be used, for illegal, unlicensed radio broadcast in violation of 47 U.S.C. § 301.

51. By reason of the foregoing, the Defendant Radio Station Equipment was, and continues to be, used and possessed with willful and knowing intent to violate 47 U.S.C. § 301, and is therefore subject to forfeiture to the United States under the provisions of 47 U.S.C. § 510.

**WHEREFORE**, Plaintiff, United States of America, requests that the Court issue a warrant, in the form attached here, for the arrest of the Defendant Radio Station Equipment; that the Court also issue a Writ of Assistance in the form attached here, to authorize the United States Marshals Service, FCC agents, or any other authorized or deputized federal agents to use all reasonable means necessary to gain access to the Defendant Radio Station Equipment; that the

Defendant Radio Station Equipment be forfeited and condemned to the use of the United States; that Plaintiff be awarded its costs in the action; and for such other and further relief as this Court deems just and proper.

Dated: Miami, Florida
       June 14, 2018

                           BENJAMIN G. GREENBERG
                           UNITED STATES ATTORNEY

By:    Matthew J. Feeley
        Assistant United States Attorney
        Florida Bar No. 0012908
        matthew.feeley@usdoj.gov
        99 N.E. 4th Street, Suite 300
        Miami, Florida 33132
        Telephone: (305) 961-9235
        Facsimile: (305) 530-7139

## **VERIFICATION**

1. I am the Regional Director of the Federal Communications Commission (FCC) Enforcement Bureau's Region Two, which includes Florida, and specifically Miami, North Miami, and North Miami Beach.

2. I have read the Verified Complaint *In Rem* and know the contents thereof.

3. The matters contained in the Verified Complaint *In Rem* are true and accurate to the best of my knowledge, information, and belief.

4. The source of my information and the grounds for my belief are my personal knowledge, information provided to me by other law enforcement officers, and the official files and records of the FCC and other federal agencies.

I declare under penalty of perjury that the foregoing is true, to the best of my knowledge, information, and belief.

Dated: Washington, D.C.
June 13, 2018

*/s/ Ronald Ramage*

Ronald Ramage
Regional Director
Region Two
Enforcement Bureau
Federal Communications Commission